SAVINGS BUILDING & LOAN ASS'N v. McCALL et al.—95 S. W. (2d) 933.

Eastern Section.   November 2, 1935.

Petition for Certiorari denied by Supreme Court, May 2, 1936.

Williams & Winston, of Johnson City, for appellant.
Simmonds & Bowman, of Johnson City, for appellees.

PORTRUM, J.   Prior to April 16, 1931, the Savings Building & Loan Association had made a loan to the defendant Ray McCall secured by a mortgage upon his real estate.  Upon this date there was

due as interest the sum of $150 and the company called upon McCall to pay or the loan would be foreclosed. The company agreed with McCall to take his personal note for this sum secured by personal indorsement, and a note in this amount was delivered to the company bearing the indorsement of S. B. White and the purported indorsement of Blanche M. Mourfield; the note is not in the record, but the testimony shows that White and Mrs. Mourfield signed as indorsers. Mrs. Mourfield is a sister of McCall and a nonresident, living in the state of Illinois.

About March 18, 1932, the defendant McCall found himself again in arrears for interest in the sum of $150 and another threatened foreclosure, when he again arranged with the company to give them a promissory note, taking up the first note and consolidating it with the new note in the sum of $300, secured in a like manner. When this note was drafted, S. B. White declined to secure it, but agreed to go security for the maximum amount of $250, and to give effect to this agreement two notes were prepared, one for $250, which White signed as indorser and another note for $50 which he declined to sign, for the reason stated. These notes were taken away by Mr. McCall for the purpose of securing his sister's signature as security. They were later returned bearing what purported to be the signature of Mrs. Mourfield signed as a joint maker. They were accepted and the first note of $150 was returned to Mr. McCall marked ''Paid by renewal.'' These two latter notes matured and were not paid, and suit was instituted against the makers and indorsers for the purpose of reducing them to judgment; and an attachment was run upon a house and lot belonging to Mrs. Mourfield in Washington county, she being a nonresident.

Mr. McCall and Mr. White made no defense to the bill, and a pro confesso was taken against them; Mrs. Mourfield filed a plea of non est factum. Proof was taken, and the complainant calling the defendant McCall examined him, and he testified that he had signed the name of his sister to the two notes in question, thinking he had authority under a family arrangement whereby he could sign her name to his obligation and she could sign his name to her obligation. This arrangement was not supported by the prior conduct of the parties for the complainant had been negotiating with Mrs. Mourfield through correspondence attempting to make her a loan upon condition that she assume a part of the obligation of her brother, and she had declined to carry this out.

In view of these facts, the complainant filed an amended and supplemental bill, suing in the alternative, first seeking to establish the authority of McCall to sign his sister's name to the notes, and if this were not sustained, then upon the original obligation, namely the $150 note which had been surrendered to McCall upon the faith of

the forged obligation. This pleading was answered by Mrs. Mourfield not admitting the execution of the $150 note, but demanding strict proof thereof. However, she stated in her answer that she at one time had indorsed a note for her brother upon which S. B. White also appeared as indorser, and held by the company; she states that this note had been paid, but it conveyed knowledge to the company of the genuineness of her signature and put them on sufficient notice to detect the forged signature appearing upon the two notes upon which they first sought to hold her. She further claims that the execution of the new notes in a larger amount was a merger, and the surrender of the original note amounted to a payment, and that the complainant was estopped. This answer was signed in person by Mrs. Mourfield and sworn to.

Upon the hearing, the chancellor was of the opinion that the signature of Mrs. Mourfield upon the $250 note and $50 note was a forgery, and the papers bore sufficient evidence to put the company upon notice of the forgery, and that it was negligent in handling the transaction, for the name as signed on each note was dissimilar, and neither was the exact name of the defendant. The $250 note bore the signature "Mary Blanch Mourfield." This signature is below that of McCall and appears as a joint maker. The signature to the $50 note—the companion note—appears "Blanche M. Mourfield" and appears as an indorser. It is argued that upon an inspection of these signatures appearing upon the two notes it is apparent that Mrs. Mourfield's signature is not in the handwriting of Ray McCall, notwithstanding he testified that he signed her name, and by comparison with the genuine signature appearing in the pleadings it is apparent that it is not in the handwriting of Mrs. Mourfield; we can do nothing more than refer to this inspection, and while it may have influenced the chancellor, we cannot pass an independent judgment upon it for the reason that the original papers are not in the transcript. The chancellor held that the complainant was negligent in accepting these forged papers under the circumstances, and he denied a recovery upon the original obligation, or the note of $150. His memorandum opinion consists of two short paragraphs which reflect this holding, but the decree contained an extended finding of facts in support of each of the defenses advanced by the defendant. The findings and conclusions contained in the decree necessitated in this court many assignments of error, for the protection of the appellant's right, in the event the chancellor was in error in denying a recovery upon the original obligation. We shall determine this alleged error, and if he did not err in this respect the appellant has no further grounds of complaint.

The chancellor said: "The renewal of the $150 note, and the merging of the same in the larger note, without her genuine signature,

under the circumstances shown in the record, released her." When first read, this paragraph threw little light upon what was in the chancellor's mind, but upon reading the record the phrase "under the circumstances shown in the record," became illuminated and appears to be an intuitive and an express reflection of his decision. The complainant was not satisfied and filed an extended petition for a rehearing, and upon a reconsideration the chancellor reaffirmed his former holding.

The chancellor expressly held, in his decree, that the complainant was negligent in handling the transaction, and in not discovering the forged signatures. This holding is assigned as error. The court concurs in the holding of the chancellor; the complainant was negligent, for it did not exercise that degree of care which the uncautious man generally exercises in the management of his own affairs. The manager of the company was handed two notes, and by an inspection of the signatures he could have determined there was an irregularity in the signature to the larger note, and that the two signatures were not the same, while it was agreed and expected that the sister would indorse both of the notes. He had in his hand then a note of $150, that the company insists bears the genuine signature of Mrs. Mourfield, and by inspecting the handwriting he could have determined that a discrepancy existed; but without this inspection he surrendered the original $150 note to the defendant McCall, and destroyed this evidence which may have been available to Mrs. Mourfield in establishing a forgery of the $150 note. No attempt is made to explain this negligent conduct, and the fraud of McCall in forging the names is no defense against the subsequent negligence of the company in not detecting the forgery. But before Mrs. Mourfield can escape her obligation upon her original undertaking she must establish that she was injured by the negligence of the company. The court thinks she has amply done so.

The original $150 note was delivered to McCall and lost or destroyed, and its contents were proven by parol; the evidence shows that Mr. White and Mrs. Mourfield were joint indorsers thereon. A suit was being threatened to collect this note which was long past due, and enforce the mortgage unless the accrued interest upon the mortgage of $150 was paid or reduced to another note, which brought about the consolidation of the obligations. At the date of the consolidation of the obligations the indorser S. B. White was solvent, while at the date of this suit he was insolvent and permitted a pro confesso to be entered against him, and the chancellor entered judgment for the whole sum against him and to this the appellant has assigned error for the reason that it sought to abandon its claim against White upon the two last notes and only enforced a claim against him on the $150 note and the court is convinced that this assignment is

based upon the reason that White is now insolvent. In fact the complainant's witness so testified. Had the company discovered the forgery and enforced its claim, and if Mrs. Mourfield had paid the $150 note, she would have been entitled to a contribution from her coindorser for one-half of the sum paid; he is now insolvent and she cannot enforce contribution. And due to the company's negligence she has been compelled to employ counsel and defend this suit, when it is now conceded that her name was forged. She made a trip from Illinois to Johnson City in defense of the claim. Her loss and the incurred expenses exceed her original obligation, due to the negligence of the company, and to now hold her liable is to require her to pay the obligation twice. The company may have a valid legal obligation against her, but a court of equity will not enforce it when it is inequitable to do so; the company was under an equitable obligation to use due care to protect the accommodation indorsers against loss due to its negligence, and in failing to do so it has no complaint if a court of conscience denies it relief. This is the finding and conclusion reached by this court, and the decree of the chancellor is affirmed, with costs.